**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | **CRIMINAL ACTION** |
| v. | ) | **No. 10-20129-07-KHV** |
| | ) | |
| WILLIE F. FORD, | ) | **CIVIL ACTION** |
| | ) | **No. 14-2271-KHV** |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM AND ORDER**

On August 26, 2011, a jury found defendant guilty of conspiracy to distribute and possess

with intent to distribute more than five kilograms of cocaine and more than 280 grams of cocaine

base, maintaining and conspiring to maintain a drug-involved premises within 1,000 feet of a school,

possession with intent to distribute and distribution of cocaine base within 1,000 feet of a school,

and use of a cell phone in causing or facilitating a drug felony. See Verdict (Doc. #572).  On

January 23, 2012, the Court sentenced defendant to 420 months in prison.  See Judgment In A

Criminal Case (Doc. #691).  This matter is before the Court on defendant's Motion Under 28 U.S.C.

§ 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Doc. #849)

filed June 6, 2014.  For reasons stated below, the Court overrules defendant's motion.

**Factual Background**

On July 27, 2011, a grand jury charged Willie F. Ford, Marcus Quinn, Mark Brooks, Antonio

Quinn, Steven Quinn, Lavaughn J. Brown, Andrew J. Price, Keyaun C. James, Daniel Cardenas

Garcia, Adriana A. Melendez, Polly Smith and Janis Diggins with conspiracy to distribute and

possess with intent to distribute more than five kilograms of cocaine and more than 280 grams of

cocaine base.  See Second Superseding Indictment (Doc. #514), Count 1.  The grand jury also

charged Ford, Marcus Quinn, Brooks, Antonio Quinn, Steven Quinn, Brown, Price and James with

conspiracy to maintain a drug-involved premises at 2632 North 20th Street, within 1000 feet of a

school.  See id., Count 4.

On direct appeal, the Tenth Circuit summarized the trial testimony as follows:

Ford and others used three houses in Kansas City, Kansas, for selling and storing drugs.  The main drug house, located at 2632 North 20th Street, known as "the Spot," sold drugs day and night.  Drugs were also sold from two other houses near the Spot.  In addition to the three houses used for selling drugs, Ford regularly stored drugs intended for sale at the Spot at his parents' house nearby.  He brought drugs from his parents' house to the Spot numerous times at coconspirator Andrew Price's request.

Following an extensive investigation of the drug trafficking operation, on October 13, 2010, law-enforcement officials made coordinated arrests of the participants and searches of the houses used for selling drugs.  As FBI agents entered the Spot, several coconspirators ran out the back door.  Two of them carried firearms and three carried large amounts of cash.  Ford was not among those arrested at the Spot. A search of the Spot produced video cameras and a monitor, 27.8 grams of crack, 79.8 grams of marijuana, an electronic scale, packaging materials, and cell phones.  Searches of the other drug houses also produced large amounts of cocaine and crack.

Ford was charged in a superseding indictment with conspiring to distribute and distributing cocaine and crack between August 29, 2007 and October 13, 2010, and other charges.  He was indicted with seventeen others, and stood trial with codefendants Marcus L. Quinn and Mark A. Brooks pursuant to a second superseding indictment.  Four other codefendants entered guilty pleas and testified at the trial: LaVaughn "Jason" Brown, Polly Smith, Adrian Melendez, and Daniel Cardenas Garcia.

The testimony of Brown and Smith established that the persons permitted to sell drugs from the Spot were part of an "inner circle" that included Ford.  Although Antonio Quinn was the main person who decided who could sell from the Spot, all members of the inner circle had some say in the matter.  Brown testified that the inner-circle members were "all the same," meaning a buyer could get drugs from him or any of the others.  R. Vol. 2 at 864-65.  The inner circle contributed to pay the bills at the Spot.  Some members of the conspiracy had regular jobs, but Ford did not.

Several witnesses placed Ford at the Spot on a regular, if not constant, basis. One witness testified that she had purchased crack from him more than 25 times. Several controlled drug buys were completed at the Spot; one of them from Ford. The government's evidence included transcripts of numerous telephone calls

between coconspirators recorded from wire intercepts on [Antonio] Quinn's telephone. During calls between [Antonio] Quinn and Ford, the two discussed other conspirators and the drug business. In particular, they used the conspiracy's code words, such as "two-door" and "four-door," to describe drug quantities. During one call, Ford advised [Antonio] Quinn that the "kick-in boys [meaning SWAT teams] have been riding," *id.* at 1276, and [Antonio] Quinn asked who was "up there," to which Ford responded by naming two other coconspirators, *id.* Furthermore, other coconspirators referred to Ford in phone calls discussing the drug trafficking organization.

Testifying coconspirator Adrian Melendez stated that he supplied cocaine to [Antonio] Quinn. He had observed [Antonio] Quinn hand to Ford cocaine that he had supplied to Quinn. Melendez saw [Antonio] Quinn give Ford cocaine "six, seven times." *Id.* at 1935. In addition, coconspirator Daniel Cardenas Garcia testified that [Antonio] Quinn told him that he supplied Ford cocaine, and that [Antonio] Quinn sometimes delayed paying Garcia because he was awaiting payment from others, including Ford, before paying Garcia.

Order And Judgment (Doc. #836) filed May 20, 2013 at 2-4 (footnote omitted).

On August 26, 2011, a jury found Ford guilty on each count. See Verdict (Doc. #572). Defendant's total offense level was 42, with a criminal history category VI, resulting in a sentencing range of 360 months to life in prison. On January 23, 2012, the Court sentenced defendant to 420 months in prison. See Judgment In A Criminal Case (Doc. #691). Forrest A. Lowry represented defendant throughout this proceeding.

On June 6, 2014, defendant filed a motion to vacate his sentence under 28 U.S.C. § 2255. Liberally construed, defendant's motion alleges that Lowry provided ineffective assistance because (1) he did not object to the indictment as multiplicitous, (2) he did not object at trial or sentencing to the failure of the indictment to set forth a specific drug type and quantity; (3) he did not effectively object to the enhancement of defendant's sentence as a career offender under U.S.S.G. § 4B1.1, and (4) he did not raise the above issues on appeal.

**Analysis**

The standard of review of Section 2255 petitions is quite stringent.  The Court presumes that the proceedings which led to defendant's conviction were correct.  See Klein v. United States, 880 F.2d 250, 253 (10th Cir. 1989).  To prevail, defendant must show a defect in the proceedings which resulted in a "complete miscarriage of justice."  Davis v. United States, 417 U.S. 333, 346 (1974).

To establish ineffective assistance of counsel, defendant must show that (1) the performance of counsel was deficient and (2) a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.  Strickland v. Washington, 466 U.S. 668, 687, 694 (1984).  To meet the first element, i.e. counsel's deficient performance, defendant must establish that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id. at 687.  In other words, defendant must prove that counsel's performance was "below an objective standard of reasonableness."  United States v. Walling, 982 F.2d 447, 449 (10th Cir. 1992).  The Supreme Court recognizes, however, "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689; see United States v. Rantz, 862 F.2d 808, 810 (10th Cir. 1988).

Strickland mandates that the Court be "highly deferential" in its review of counsel's performance and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 466 U.S. at 689. The Court must not second-guess counsel's assistance with the benefit of hindsight simply because defendant was convicted and sentenced to a lengthy prison term.  See id.  Here, although counsel did not secure defendant's acquittal, his strategy and conduct were reasonable and highly competent.

## I.     Failure To Object To Indictment Based On Multiplicity

Defendant argues that Lowry provided ineffective assistance because he did not argue that

Count 1 of the indictment was multiplicitous with Count 4.  Movant's Memorandum Of Points And

Authorities Supporting His Title 28 U.S.C. § 2255 Motion To Vacate, Set Aside, Or Correct

Sentence By A Person In Federal Custody (Doc. #850) at 5-11.  Lowry's failure to object on

multiplicity grounds was not deficient or prejudicial.  The Court may impose multiple punishments

where Congress plainly expresses an intent to do so.  See Garrett v. United States, 471 U.S. 773, 779

(1985); United States v. Berres, 777 F.3d 1083, 1090 (10th Cir. 2015).  Congress intended to punish

separately conspiracies to distribute controlled substances and conspiracies to maintain drug-

involved premises.  See United States v. Church, 970 F.2d 401, 407 (7th Cir. 1992) (plain language

of statute indicates that Congress intended to punish conspiracies to violate § 841(a)(1) separately

from conspiracies to violate § 856(a)(1)); cf. United States v. McCullough, 457 F.3d 1150, 1163

(10th Cir. 2006) (convictions for conspiracy to distribute narcotics under § 846 and maintaining

premises for narcotics-related purposes under § 856 are not multiplicitous); United States v.

Sturmoski, 971 F.2d 452, 461 (10th Cir. 1992) (convictions under § 846 and §§ 856(a)(1) and (a)(2)

are not multiplicitous because plain language and legislative history of § 856 show Congress

unequivocally determined to create a distinct offense – with its own, separate punishment – aimed

specifically at criminalizing use of property for narcotics-related purposes).

Even if the Court found that congressional intent of multiple punishments was unclear,

defendant has not shown that counsel's failure to object on multiplicity grounds was deficient or

prejudicial.  The Double Jeopardy Clause prohibits multiple punishments and multiple prosecutions

for the same criminal conduct.[1]  United States v. Dixon, 509 U.S. 688, 696 (1993); Blockburger v.

United States, 284 U.S. 299, 304 (1932); see also United States v. Felix, 503 U.S. 378, 385 (1992)

(by itself, overlap in proof between two counts does not establish double jeopardy violation); United

States v. Farr, 591 F.3d 1322, 1324 (10th Cir. 2010) (if each offense contains separate element not

present in other, double jeopardy does not bar prosecution and punishment of both offenses).  "[I]f

two charges of conspiracy are in fact based on a defendant's participation in a single conspiracy, the

former jeopardy clause bars the second prosecution."  United States v. Daniels, 857 F.2d 1392, 1393

(10th Cir. 1988).  Defendant has the burden of proving double jeopardy and must prove "in fact and

in law" that only one conspiracy existed, i.e. that the facts alleged in one conspiracy would sustain

a conviction if offered in support of the other.  United States v. Mintz, 16 F.3d 1101, 1104 (10th Cir.

1994); Daniels, 857 F.2d at 1394; see United States v. Swingler, 758 F.2d 477, 492 (10th Cir. 1985)

(must be two separate agreements to violate law).

In a double jeopardy analysis involving conspiracies, the Court must determine whether the

two transactions were interdependent and whether the participants in the two conspiracies were

united in a common unlawful goal or purpose.  Mintz, 16 F.3d at 1104.  Interdependence involves

a determination whether the activities of the alleged co-conspirators in one aspect of the charged

scheme were necessary or advantageous to the success of the activities of co-conspirators in another

aspect of the charged scheme, or the success of the venture as a whole.  United States v. Rodriguez-

Moreno, 215 F.3d 1338 (Table), 2000 WL 504858 at *3 (10th Cir. Apr. 28, 2000).  The focal point

of the interdependence analysis is whether the alleged co-conspirators were united in a common goal

---

[1]      The Double Jeopardy Clause of the Fifth Amendment provides as follows: "[N]or
shall any person be subject for the same offence to be twice put in jeopardy of life or limb."

or purpose. United States v. Carnagie, 533 F.3d 1231, 1239 (10th Cir. 2008). A common goal by itself, however, is insufficient to establish interdependence. "What is required is a shared, single criminal objective, not just similar or parallel objectives between similarly situated people." Id. at 1239 (quoting United States v. Evans, 970 F.2d 663, 671 (10th Cir. 1992)).

Defendant has not alleged sufficient facts to show that he has been charged or punished for multiple offenses based on the same conduct. The participants in the two conspiracies overlap to a significant degree, but they are not identical. The drug distribution conspiracy charges four individuals who were not charged in the drug house conspiracy. The time frames of the conspiracies overlap but are not identical (Count 1: August 29, 2007 through October 13, 2010; Count 4: May 14, 2008 through October 13, 2010). While the conspiracies certainly overlap, defendant has not shown that counsel had an adequate basis to argue that only one conspiracy existed or that the two conspiracies were interdependent.[2] The government's evidence on one conspiracy was insufficient to sustain a conviction on the other. See United States v. Cardenas, 105 F. App'x 985, 988 (10th Cir. 2004) (fact that two alleged conspiracies overlapped for single day does not establish that they were interdependent; no double jeopardy problem where facts alleged on one offense would not sustain conviction if proven on other offense); cf. United States v. Johnson, 977 F.2d 1360, 1374 (10th Cir. 1992) (various stashes of drugs considered separate where evidence indicates they were intended for different purposes or transactions). Likewise, the elements of a conspiracy to distribute and possess with intent to distribute more than five kilograms of cocaine and more than 280 grams of cocaine base do not establish a conspiracy to maintain a particular residence for the purpose of

---

[2]     A common goal by itself is insufficient to establish interdependence. "What is required is a shared, single criminal objective, not just similar or parallel objectives between similarly situated people." Carnagie, 533 F.3d at 1239 (quoting Evans, 970 F.2d at 671).

distributing cocaine base, and vice versa.[3] See Blockburger, 284 U.S. at 304 ("A single act may be

an offense against two statutes; and if each statute requires proof of an additional fact which the

other does not, an acquittal or conviction under either statute does not exempt the defendant from

prosecution and punishment under the other."). Defendant has not set forth a sufficient factual or

legal basis for counsel to object to his convictions or sentence on multiplicity grounds. Accordingly,

he has not shown that counsel's failure to object was deficient or prejudicial. The Court overrules

defendant's first claim for relief.

## II.    Objection Based On Specific Drug Type And Quantity

Defendant argues that Lowry provided ineffective assistance because he did not object to the

indictment for failure to set forth drug type and quantity, he did not propose a jury instruction which

required the jury to specifically find drug type and quantity, and he did not object to defendant's

enhanced sentence based on drug type and quantity. Movant's Memorandum Of Points And

---

[3]     To find defendant guilty on Count 1, the jury had to find that (1) two or more persons agreed to possess cocaine with intent to distribute it, to distribute cocaine, to possess cocaine base with intent to distribute it, or to distribute cocaine base; (2) defendant voluntarily and intentionally joined the agreement; (3) when defendant joined, he knew the purpose of the agreement; (4) in some way or manner, the parties to the agreement intended to act together within the scope of the agreement for their shared mutual benefit; and (5) the overall scope of the agreement involved more than five kilograms of cocaine or more than 280 grams of cocaine base. Instructions To The Jury (Doc. #562), Inst. No. 20.

To find defendant guilty on Count 4, the jury had to find that (1) two or more persons agreed to maintain a residence at 2632 North 20th Street, Kansas City, Kansas for the purpose of distributing cocaine base; (2) defendant voluntarily and intentionally joined the agreement; (3) when defendant joined, he knew the purpose of the agreement; (4) in some way or manner, the parties to the agreement intended to act together within the scope of the agreement for their shared mutual benefit; and (5) the residence was within 1000 feet of a public secondary school. Id., Inst. No. 28.

Defendant could have been convicted under Count 1 without ever agreeing to maintain a residence for purposes of distributing cocaine base. On the other hand, defendant could have been convicted on Count 4 without ever agreeing to distribute a specific amount of cocaine (five kilograms) or cocaine base (280 grams).

Authorities Supporting His Title 28 U.S.C. § 2255 Motion To Vacate, Set Aside, Or Correct

Sentence By A Person In Federal Custody (Doc. #850) at 12-16.  Count 1 of the Second Superseding

Indictment charged specific quantities of controlled substances, i.e. more than five kilograms of

cocaine and more than 280 grams of cocaine base.  Second Superseding Indictment (Doc. #514).

Likewise, the jury instructions required the jury to find that the "overall scope of the agreement

involved more than 5 kilograms of cocaine or more than 280 grams of cocaine base ('crack

cocaine')."  Instructions To The Jury (Doc. #562), Inst. No. 20.  Because the jury found defendant

guilty on Count 1, the Court properly applied the enhanced statutory penalties under 21 U.S.C.

§ 841(b)(1)(A)(ii) and (iii).  Defendant has not alleged a sufficient factual or legal basis for counsel

to object to his conviction or sentence on Count 1 based on the purported failure to set forth drug

quantity or type.[4]

Defendant argues that Lowry should have objected to Counts 4 and 5 because they did not

set forth a specific drug quantity.  Movant's Memorandum Of Points And Authorities Supporting

His Title 28 U.S.C. § 2255 Motion To Vacate, Set Aside, Or Correct Sentence By A Person In

---

[4]     On direct appeal, the Tenth Circuit overruled defendant's challenge to drug quantity
as follows:

> "[I]n calculating drug quantity, the district court may consider, 'in the case of a
> jointly undertaken criminal activity, all reasonably foreseeable acts and omissions
> of others in furtherance of the jointly undertaken criminal activity.'" *Foy*, 641 F.3d
> at 469 (ellipsis omitted) (quoting U.S.S.G. § 1B1.3(a)(1)(B)).  Ford argues that the
> drug quantities processed by the conspiracy were not foreseeable to him.  The district
> court determined that Ford was a "major player" in the drug conspiracy to be "held
> accountable for the reasonably foreseeable quantities of drugs trafficked by himself
> and his co-participants in furtherance of the jointly undertaken criminal activity[, all
> of which] occurred within the scope of his agreement to participate."  R. Vol. 2 at
> 3025.  Based on the evidence discussed above, we agree.

Order And Judgment (Doc. #836) at 11.

Federal Custody (Doc. #850) at 15.  The Court did not impose an enhanced sentence under Counts 4

or 5 based on drug quantity.  On Count 4 (conspiracy to maintain drug involved premises), the Court

sentenced defendant to 420 months in prison, which is less than the statutory maximum of 40 years

in prison.  See 21 U.S.C. § 856(b) (maintaining drug-involved premises subjects offender to

statutory maximum of 20 years in prison); 21 U.S.C. § 860(a) (maintaining drug involved premises

within 1,000 feet of school subjects offender to twice the punishment authorized under § 856).  On

Count 5 (distribution of cocaine base within 1,000 feet of a public secondary school), the Court

sentenced defendant to 420 months in prison, which is less than the statutory maximum of 60 years

in prison.  See 21 U.S.C. § 841(b)(1)(C) (distribution of Schedule I or II controlled substance and

prior conviction for drug felony offense subjects offender to statutory maximum of 30 years in

prison); 21 U.S.C. § 860(a) (distribution of controlled substance within 1,000 feet of school subjects

offender to twice the punishment authorized under § 841).  Defendant has not shown that Lowry had

any legal basis to object to a sentence of 420 months on Counts 4 or 5, which was within the

statutory maximum for each offense based on a detectable amount of the controlled substance.  The

Court therefore overrules defendant's claim that Lowry provided ineffective assistance because he

did not object to the indictment for failure to set forth drug type and quantity.

## III.    Failure To Object To Career Offender Classification

Defendant argues that Mr. Lowry provided ineffective assistance because he did not

effectively object to the enhancement of defendant's sentence as a career offender under U.S.S.G.

§ 4B1.1.  See Movant's Memorandum Of Points And Authorities Supporting His Title 28 U.S.C.

§ 2255 Motion To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Doc.

#850) at 19-20.  In particular, defendant argues that his prior conviction for fleeing and eluding

under K.S.A. § 8-1568 is not a felony crime of violence under the career offender guideline.  In a

sentencing memorandum and at sentencing, Lowry objected to defendant's status as a career

offender.  See Defendant's Sentencing Memorandum And Request For Variance (Doc. #681) at 1-2;

Transcript Of Sentencing (Doc. #757) at 27.  In particular, Lowry argued that defendant's conviction

for fleeing and eluding did not qualify as a "felony" under U.S.S.G. § 4B1.2 because defendant was

subject to a maximum sentence of 11 months in prison.  See Defendant's Sentencing Memorandum

And Request For Variance (Doc. #681) at 2; Transcript Of Sentencing (Doc. #757) at 27.   At

sentencing, in light of Tenth Circuit precedent in United States v. Hill, 539 F.3d 1213 (10th Cir.

2008), the Court found that the conviction for fleeing and eluding was a qualifying felony crime of

violence under Section 4B1.1 and that defendant therefore qualified as a career offender.  Transcript

Of Sentencing (Doc. #757) at 27.  Defendant has not explained how counsel could have more

effectively argued the issue.  Defendant also has not shown that if counsel had made a more

elaborate objection, the Court would have reached a different result.[5]   The Court overrules

---

[5]       The Tenth Circuit later overruled Hill, but defendant has not shown that counsel's
argument on the issue was deficient or prejudicial.  See United States v. Brooks, 751 F.3d 1204,
1213 (10th Cir. 2014) (overruling Hill, and finding under career offender provision, "the maximum
amount of prison time a particular defendant could have received controls, rather than the amount
of time the worst imaginable recidivist could have received").  Under Brooks, defendant apparently
does not qualify as a career offender under U.S.S.G. § 4B1.1 and therefore his criminal history
category would be lowered from VI to IV.  Even so, Brooks would not alter defendant's sentencing
range because at a total offense level 42, the sentencing range is 360 months to life in prison for all
criminal history categories.
        Defendant has not shown a reasonable probability that the Court would have imposed a
different sentence based on the same sentencing range with a lower criminal history category (IV
instead of VI).  In choosing a sentence of 420 months in prison, the Court cited some of defendant's
criminal history but did not refer to his status as a career offender.  See Transcript Of Sentencing
(Doc. #757) at 50-52.  The Court noted that (1) the government could have filed an enhancement
under 21 U.S.C. § 851 for another prior conviction, which would have raised defendant's mandatory
minimum sentence to life in prison, see id. at 32, 48-49; (2) immediately after defendant was
released from prison on a 63-month sentence, he went back to committing the same crimes as before,
see id. at 32, 50, (3) the drug trafficking organization did untold damage to the community, see id.
at 50, and (4) defendant should receive the same sentence as Brooks, 420 months in prison, see id.
at 49.  In sum, even if defendant's criminal history category was lowered from VI to IV with the
                                                                                     (continued...)

defendant's third claim for relief.[6]

## IV.    Failure To Raise Claims On Appeal

Defendant argues that Lowry provided ineffective assistance because he did not raise the above three claims on appeal.  For reasons stated above, the Court finds that counsel's performance on appeal was not deficient or prejudicial.

### Conclusion

The files and records in this case conclusively show that defendant is not entitled to relief. Moreover, defendant does not allege specific and particularized facts which, if true, would entitle him to relief.  Accordingly, no evidentiary hearing is required.  See 28 U.S.C. § 2255; United States v. Cervini, 379 F.3d 987, 994 (10th Cir. 2004) (standard for evidentiary hearing higher than notice pleading); United States v. Kilpatrick, 124 F.3d 218 (Table), 1997 WL 537866, at *3 (10th Cir. 1997) (conclusory allegations do not warrant hearing); United States v. Marr, 856 F.2d 1471, 1472 (10th Cir. 1988) (no hearing required where court may resolve factual matters raised by Section 2255 petition on record); United States v. Barboa, 777 F.2d 1420, 1422-23 (10th Cir. 1985) (hearing not required unless "petitioner's allegations, if proved, would entitle him to relief" and allegations are not contravened by record).

---

[5](...continued)
same sentencing range of 360 months to life, the Court would have imposed the same sentence.

[6]      In his reply brief, defendant contends that the career offender classification prejudiced him because the Bureau of Prisons (BOP) uses this classification in determining placement.    See Defendant's Response And Supporting Memorandum Of Law To The Government's Response To His 28 U.S.C. § 2255 Motion To Vacate, Set Aside Or Correct Sentence (Doc. #868) filed January 5, 2015 at 8.  Defendant's BOP classification is a collateral consequence of the execution of his sentence and does not constitute "prejudice" under Section 2255.  See Strickland, 466 U.S. at 694 (defendant must show reasonable probability that but for counsel's unprofessional errors, result of proceeding would have been different).

### Certificate Of Appealability

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).[7]  To satisfy this standard, the movant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Saiz v. Ortiz, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting Tennard v. Dretke, 542 U.S. 274, 282 (2004)).  For reasons stated above, the Court finds that defendant has not satisfied this standard.  The Court therefore denies a certificate of appealability as to its ruling on defendant's Section 2255 motion.

**IT IS THEREFORE ORDERED** that defendant's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Doc. #849) filed June 6, 2014 be and hereby is **OVERRULED**.  A certificate of appealability as to the ruling on defendant's Section 2255 motion is **DENIED**.

Dated this 22nd day of May, 2015 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

---

[7]  The denial of a Section 2255 motion is not appealable unless a circuit justice or a circuit or district judge issues a certificate of appealability.  See Fed. R. App. P. 22(b)(1); 28 U.S.C. § 2253(c)(1).